# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

VINCENT DELANEY,

Plaintiff,

v.

CHARLES D. BAKER, in
his official capacity as
Governor of Massachusetts,

Defendant

CIVIL ACTION NO.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Local Rule 7.1, Plaintiff, Vincent Delaney, files this

Memorandum in Support of his Emergency Motion For A Temporary Restraining

Order. Counsel hereby certifies that he did mail to the defendant a request to meet

and discuss the Plaintiff's assertions in his Complaint herein, which was received

by the Defendant's office on June 10, 2020. Defendant has not responded to

Plaintff's offer to confer with him and exchange ideas and remedial measures that

could or should be taken in this matter.

Since March 10, 2020 the Commonwealth of Massachusetts has been in a

State of Emergency resulting from the Defendant's declaration of same in response

to COVID-19. At the time of this declaration, approximately 91 presumed cases had been identified affecting the citizens of this state. Many decisions were and continue to be made by the Defendant in response to this public health situation and as a result of these decisions, Plaintiff has been aggrieved of his constitutional rights without any forum provided whatsoever for an opportunity to be heard on the issuance of various Executive Orders issued by the Defendant and the medical or scientific basis or bases used as justification for same.

Plaintiff is challenging the Defendant's invocation of c. 639 of the Acts of 1950 on March 10, 2020 as to his lawful authority to do same and its application to the current health situation, his authority to declare and enforce orders issued pursuant thereto, particularly his most recent Executive Orders No. 31 and 33. The Plaintiff contends that the Governor is acting outside the scope of his constitutionally defined executive authority and even if the Court were to find these Orders are lawful in the first instance, they are nonetheless unconstitutional because they impair and infringe upon Defendant's constitutional rights, as identified herein.

Plaintiff's constitutional rights must be safeguarded and preserved, particularly at a time when the state invokes the use of its awesome police power. The police power entails a most solemn and sacred duty to provide for the physical safety and well-being of its people, coupled with a concomitant duty to avoid the

2

use of oppressive and excessive measures put into place under the guise of the fulfillment of this duty. The citizenry also deserves the protection of their constitutional rights, such that they are not unreasonably infringed upon under the guise of preserving public health and safety.

Defendant's Executive Orders No. 31 and 33, issued on May 1, 2020 and May 18, 2020 respectively, have infringed upon and continue to burden Plaintiff's constitutional rights guaranteed under the First, Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution, as well as Article II of the Massachusetts Declaration of Rights.

In his challenge, Defendant asserts that the Executive Orders Nos. 31 and 33, as they may pertain to him and others similarly situated, are facially and as applied unconstitutional. Taken together cumulatively, they are disparate, discriminatory, hostile to the exercise of religious freedom, restrict his free speech rights, and his right to assemble in communion with his fellow parishioners unfettered from state mandates.

This is in contrast to the largely unhindered secular activities, such as protesting, purchasing alcohol and lottery tickets, working in corporations and large businesses, shopping in large department stores and other " big box" stores, which have been deemed essential since March 10, 2020. The corporal needs of the body have been deemed essential, but  the spiritual needs of the eternal soul, which are just as important to the Plaintiff and millions of

3

others as their bodily needs, have not been accorded the same dignity and essentiality by the Governor's Orders. Mr. Delaney sincerely and firmly believes the tenets of his faith and to tries to fulfill his duties and obligations to the best of his ability and conscience. His concern is over the state's interference in the internal processes of the local Catholic Church, which if it wants to remain open, must abide by Order No. 33.

Plaintiff's constitutionally protected activity in the free exercise of religion has been severely burdened by the state's restrictions on the number of attendees who can be present at any time during the presentation of the Holy Mass and the required use of masks or face coverings during this holy and sacred event. While Plaintiff's right to peaceably assemble to protest is unimpeded, his right to worship according to the dictate's of his conscience has been unconstitutionally infringed upon by the Defendant's Orders. It is clear on its face that the Defendant's Orders discriminate against religious activity where the message and content has been targeted in one activity and not the other. These so-called "temporary" measures as applied to houses of worship activities have no timeframe for their expiration to occur. Even in the last phase of the Defendant's Reopen Plan, place of worship will continue to be restricted by the limitations of the undefined "new normal" while permitting bars, clubs, and other leisure activities the full resumption of business operations.

Executive Orders Nos. 31 and 33, as they and pertain to Plaintiff and others similarly situated, are facially and as applied unconstitutional. The Orders are disparate, discriminatory, hostile to the exercise of religious freedom, impose intolerable burdens on Plaintiff's rights to free speech and to assemble in communion with his fellow parishioners unfettered from unreasonable and unconstitutional state mandates. In contrast, secular activities, such as protesting, purchasing alcohol and lottery tickets, working in corporations and large businesses, shopping in large department stores and other "big box" stores, have been deemed essential since March 10, 2020.

The Defendant unconstitutionally discriminated between corporal needs that he deemed "essential" and spiritual needs, which he alone deemed unessential. For a person of faith, such as Plaintiff and others like him, the spiritual needs of the eternal soul are just as important as their bodily needs. Plaintiff's interests in his ability to fully access the resources to maintain his spiritual needs have not been accorded the same dignity as more secular activities deemed "essential" by the Defendant's Orders. Plaintiff sincerely and firmly believes the tenets of his faith and to tries to fulfill its duties and obligations to the best of his ability and conscience. Plaintiff asserts that his right to worship according to the dictate's of his conscience have been severely impacted by the state's interference in the internal processes of the local Catholic Church, which if it wants to remain open, under penalty of fines and other charges, must abide by Order No. 33.

One issue before the court is whether Governor's Order No. 33 impermissibly infringes upon Plaintiff's sincerely held religious beliefs by restricting the amount of people who can be present at any service or activity held by a parish thereby unconstitutionally infringing his rights to peaceably, worship and commune with other parishioners. Order No. 33 dictates these measures and there is no duration to its mandated terms. It has become a state approved form of worship, if not in content or substance, at least in form or procedure, particularly as concerns the prohibition on receiving the Holy Blood of Jesus Christ, under the species of wine from the communal cup. The reception of Holy Communion is now prohibited as to its receipt on one's tongue. The right to receive this sacred Sacrament in this manner has been held inviolate since time immemorial. In fact, many millions worldwide hold this method of partaking in this Sacrament only in this manner in such reverence out of love and respect for the holiness of the sacred body of Jesus Christ.

Defendant's Orders violate Plaintiff's conscience as it does so many others who wish to practice their faith without impermissible government interference. The bedrock principle that government may not suppress or control the belief and practices of worship or internal processes of a church is long established and without any dispute. *See Church of Lukumi Babalu Aye, v. City of Hialeah*, 508 U.S. 520 (1993).

Plaintiff seeks temporary, preliminary and permanent injunctive relief to be able to practice the tenets of his Catholic faith without the intrusiveness and heavy-handed restrictions of the state issued under the guise of protecting public health and safety when no such similar restrictions are mandated upon many secular businesses and activities, or even if there may be some similarity in certain environments, do not intrude upon the sacred manner and form of protected and long-cherished and held constitutional rights.

Generally speaking, the Plaintiff or others similarly situated were able to purchase alcohol, food and other consumables until approximately April 1, 2020 without any distancing or masks or any face coverings requirements. Now, Plaintiff may be refused admittance to Holy Mass without a mask or face covering of some sort or he faces the possibility of incurring a civil fine of $300.00.

The mandate to wear masks or face coverings, likewise, infringe on Plaintiff's freedom of conscience as protected by The Constitution of the Commonwealth of Massachusetts Declaration of Rights, Article II. Requiring Plaintiff and others similarly situated to cover their faces whether in church or in public is an affront to their faith and the teachings of the Bible. The need to be in communion in the Holy Catholic Church requires the ability to be in close proximity to other competent and consenting adults. Fellowship limited artificially by arbitrarily government dictated distances prevents the moments of communion that are essential to the practice of Plaintiff's faith.

7

Fundamentally, all people in the Commonwealth of Massachusetts have natural rights to live and breathe. Plaintiff asserts his right to choose his own medical care. Because the evidence is overwhelming that healthy people wearing masks in everyday life is hazardous to health, Plaintiff, in consultation with his doctor, has chosen not to wear masks or face coverings. It is Plaintiff's fundamental right to have his face exposed and his breathing unimpaired. Defendant's Orders infringe on Plaintiff's right to informed consent regarding the use or non-use of medical devices.

Since wearing a mask is considered a health intervention because it affects the function of the respiratory system, Plaintiff asserts that only a licensed medical doctor is qualified to give individual medical advice. To require all people, regardless of medical condition or state of health, to wear masks and keep apart from each other interferes with the freedom of conscience that the Massachusetts Constitution protects. Defendant's Orders rely on recitals that are inaccurate which impair the construction of the content of the Orders. Defendant's recitals assert a set of *beliefs*, not facts.

Plaintiff contends that the Defendant invoked several questionable and medically uncorroborated statements in the Orders' recitals, which impair the construction of the Orders, including: the conflation of the SAR CoV-2 virus with the illness named "COVID-19," which is a "classification" based on a set of clinical, epidemiological, and laboratory criterion; unsubstantiated claims made

8

about a "disease caused by the 2019 novel Coronavirus"; confirmed cases which were neither defined nor confirmed; a stipulation about a causal relationship between the virus and deaths, which was not known at the time; and the claim of presumed positive cases which are largely based on a subjective classification of idiopathic clinical symptom presentation, rather than the result of tests. Defendant's beliefs, based on assumptions and theory is equivalent to the practice of religion and is an imposition of "faith" precluded by both the Massachusetts and United States Constitution.

The experimental nature of distancing and mask mandates, where they are not based on established scientific and medical principals and there are no assurances that they will not lead to further harm or deaths, require the informed consent of the people. Plaintiff, as well as others similarly situated, who do not consent, are being deprived of their most basic and fundamental of all human rights. If a person has no power to breathe freely, especially when there is absolutely no evidence that to do otherwise offers any good to the individual or the public whatsoever, is the most egregious insult to natural law, common law, and our state and national constitutions.

Defendant's Orders that infringe on the most basic rights of people to move about freely and to breathe unimpeded have other serious consequences that have and continue to injure Plaintiff. When everyone is masked, communication is hindered and stress levels are heightened, resulting in psychological harm. Mask

mandates draw attention to those not in compliance with the Order, and result in much distrust, sadness, isolation, and anger.

Requiring people to adhere to a dress code is both demeaning and stigmatizing to those who cannot or will not comply. Mandating masks and distancing compels speech in that it forces, by way of otherwise restricting the ability of people to access essential goods and services, to support or espouse ideals or beliefs which they disagree. The exercise of protected expression and conduct can not be infringed based on unproven and speculative public health benefits. Plaintiff has chosen to make the right healthcare choices for himself. Plaintiff has a right to refuse to medical care, even life-saving medical treatment. Defendant has no authority to inhibit Plaintiff's right to breathe with face coverings and to interact and move in proximity to others as he and other consenting adults have always been accustomed in their secular and spiritual lives.

Defendant's Order No. 31, requiring masks or face coverings also violates the Ninth Amendment's and MGL c.214, § 1B's Right to Privacy: "A person shall have a right against unreasonable, substantial or serious interference with his privacy." The common law right to privacy provides a remedy for the intrusion upon the seclusion of another and the unreasonable publicity given to another's private life.

By restricting access to fresh air in public, the Order is an infringement of the fundamental right to control one's own body, and interferes with one's ability to

make personal health care decisions, in violation of the 5th, 9th, and 14th Amendments to the US Constitution.

Pursuant to Fed. R. Civ. P. 65, a court must consider four factors in deciding whether to issue a TRO: 1.) the likelihood of success on the merits; 2.) whether irreparable harm would occur to the plaintiff in the absence of preliminary relief; 3.) balancing the equities of the parties as to the harm the movant would suffer if he were denied the requested relief and the harm the non-movant would suffer if the requested relief were granted; and 4) the public interest in the granting or the denial of the injunctive relief. *Adams v. Wells Fargo Bank, N.A.*, 221 F.Supp. 3d 171, 177-178 (D. MA 2016), citing *Voice Of The Arab World, Inc. v. MDTV Medical News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011).

<u>Likelihood of Success on the Merits</u>

In resolving the first factor, which the court must consider in deciding whether a TRO should issue, Plaintiff contends that his Complaint and the Exhibits attached thereto, coupled with this Memorandum, undoubtedly establishes the likelihood of success in this matter.

The Governor assumed incorrectly on March 10, 2020 that he had the requisite power to invoke c. 639 of the Acts of 1950, the Civil Defense Act, with its concomitant extensive powers to manage and control the COVID-19 pandemic.

The invocation of the Civil Defense Act was an unnecessary act and a violation of the separation of powers as set forth in Art. XX and Art. XXX of the

11

Massachusetts Declaration of Rights, which, in effect, was an unlawful usurpation of power. Injunctive relief may issue without the need "to predict the eventual outcome on the merits with absolute assurance." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F3d. 10, 12 (1st Cir. 1996). The court's decision in determining a likelihood of success on the merits need only be based on the probable outcome. *See Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir. 1991). And, where there are multiple counts within a complaint, Plaintiff need only establish a likelihood of success on one or more of the claims. *McKenzie v. Option One Mortgage,* 321 F.Supp.3d 186 (D.MA 2018). Plaintiff firmly believes that he has met this test. This is so because the event triggering the initial invocation of c. 639 of the Acts of 1950 was not covered by its prescribed language nor could it be reasonably be inferred or implied as being within its definitions. The use of the immense power given to the Governor under the Civil Defense Act was used in an arbitrary and capricious manner. The Orders appear to be irrational with no logical basis to substantiate their issuance, such as deeming liquor stores and all local stores that conducted lottery business as essential, yet gun stores, and for the most part, houses of worship, were shuttered. Big box commercial enterprises were deemed "essential," yet houses of worship and gun stores, which enjoy fundamental bedrock constitutional protections, were not.

The Orders did not and do not apply neutrally, since on their face they have different restrictions for religious and secular activities and they are also not

generally applicable since many exemptions are carved out for secular activities and different types of economic activity and professions. Because the Orders are not neutral and not of general applicability, they must be justified by a compelling governmental interest which must use the least restrictive means that are narrowly tailored to advance that interest. *Lukumi,* Id at 528. Plaintiff would posit that a restriction placed on the number of people that may attend Holy Mass or other events is inapposite and unconstitutional at a time in our state and nation when religious gatherings should be encouraged given the societal breakdown that is ongoing and is being manifested daily before our very own eyes. There are no such limits placed on the massive protests which have been occurring and it seems quite clear that the content of the messages is endorsed and approved in the protests, yet not favored in houses of worship, as evidenced by the state's capacity restrictions. Freedom of speech and assembly are guaranteed in the secular forum, as they should be, yet both are substantially restricted in the religious forum, thereby unconstitutionally infringing upon them and the free exercise of religion. This cannot stand and has no sound basis whatsoever for its occurrence.

Order No. 33 does not and cannot explain how the virus would be ready to attack at religious gatherings, yet would be docile at such places as offices, grocery stores, liquor stores, convenience stores, "big box" stores and the like. It cannot and will not because there are no medical, scientific or logical bases for the disparate treatment given to constitutionally protected religious activity.

This particular issue was recently before the 6th Circuit Court of Appeals.
The Court had before it consideration of an executive order. In reaching its
decision, it stated: "But the orders do not permit soul-sustaining group services of
faith organizations, even if the groups adhere to all the public health guidelines
required of the other services. Keep in mind that the Church and its congregants
just want to be treated equally. They don't seek to insulate themselves from the
Commonwealth's general public health guidelines. They simply wish to
incorporate them into their worship services. They are willing to practice social
distancing. They are willing to follow any hygiene requirements. They do not ask
to share a chalice. The Governor has offered no good reason for refusing to trust
the congregants who promise to use care in worship in just the same way it trusts
accountants, lawyers and laundromat workers to do the same. Come to think of it,
aren't the two groups of people often the same people-going to work on one day
and going to worship on another? How can the same person be trusted to comply
with social-distancing and other health guidelines in secular settings but not be
trusted to do the same in religious settings? The distinction defies explanation, or
at least the Governor has not provided one." *Roberts v. Neace*, No. 20-5465, 2020
U.S. App. LEXIS 14933, at *8-9 (6th Cir. May 9, 2020). Order No. 33 herein, also
treating houses of worship less favorably than secular groups, businesses and
activities, defies a rational explanation or basis or for its disparate treatment.

14

Likewise, Defendant's Order No. 31 "Requiring Face Coverings in Public Places Where Social Distancing is not Possible" infringes on Plaintiff's most basic human and fundamental right to breathe. Plaintiff's constitutional rights to due process, privacy, freedom of speech, freedom of religion, freedom of conscience, freedom of association, the right to informed consent, and the right to make personal medical decisions.

II. Irreparable Harm To Plaintiff:

The Supreme Court has held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). Just last month, this Court stated that " a finding of a First Amendment violation obviates the need for an additional showing of irreparable harm.". Sindicato Puertorriqueno de Trabajadores, 699 F.3d at 10-11. ACA Int'l. v. Healey, No. 20-10767-RGS, 2020 U.S. Dist. LEXIS 79716, at *25 (D. Mass. May 6, 2020).

Since March 15, 2020, Plaintiff's First Amendment rights to free exercise of religion, right to peaceably assemble and freedom of speech have been significantly infringed upon and curtailed. On its face, the Orders permitted many secular businesses and activities to allow to continue to operate while closing others without due process or sufficient justification. Plaintiff has suffered and continues to suffer irreparable harm with no expiration date on the time limit of the

current restrictions. As previously stated, no such restrictions exist for many secular activities.

Order No. 33's arbitrary limit on the number of attendees at Holy Mass and other religious activities is not neutral and or of general application since no such restrictions exist for business activities in many service and goods industries. "A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Lukumi,* Id. at 546. In order to satisfy strict judicial scrutiny, a law restrictive of religious practice must not just advance a compelling governmental interest, but it "must be narrowly tailored in pursuit of those interests." Id. at 531. Many other states have let religious activities continue without unnecessarily impeding its customs and practices. Defendant cannot prove how allowing religious services and activities to continue without capacity restrictions will adversely affect the state's compelling interest in protecting the public health and safety while no such restrictions exist for many secular activities. Constitutional rights and freedoms should be encouraged, not unduly restricted. For, 'it is always in the public interest to prevent the violation of a party's constitutional rights". *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd. sub. nom. *Burwell v. Hobby Lobby Stores, Inc.* 573 U.S. 682 (2014).

Likewise, Defendant's Order No. 31 and mandates requiring artificial and arbitrary "distancing," have and continue to cause Plaintiff severe psychological,

spiritual, and economic harm. Plaintiff and others similarly situated are at risk of

significant physical harm because the mandates do not take into account each

person's medical history or medical beliefs. Orders that mandate unproven and

speculative medical care that infringe on rights secured by the Constitution are

outside the scope of the state's police power. Irreparable harm has been ongoing.

   III. Balancing the Equities:

   It is clear that if Plaintiff's motion is allowed, the Defendant will not suffer

any harm, much less irreparable him. Plaintiff has no adequate remedy at law to

rectify his ongoing physical, spiritual and economic harm since he has suffered and

continues to suffer irreparable spiritual harm. In order to rectify this deprivation of

constitutional rights, injunctive relief is proper pending a full hearing on the merits

of the Complaint. Undoing the status quo and restoring the Parties to their

respective statuses as of March 9, 2020 will not unduly favor either. This is the

proper thing to do.

   Such temporary relief is in order for "the purpose of such interim equitable

relief is not to conclusively determine the rights of the parties, but to balance the

equities as the litigation moves forward." University of Texas v. Camenisch, 451

U.S. 390, 395 101 S. Ct. 1830, 68 L. Ed.2d 175 (1981). See also, Trump v.

International Refugee Assistance Project, 582 U.S.__ , 137 S. Ct. 2080, 198 L. Ed.

2d 643 (2017). The balance of the equities clearly lie in favor of the Plaintiff. On

one side is the Plaintiff's constitutional rights being heavily infringed upon and on

the other, is the Governor's use of the massive and powerful Civil Defense Act

without any checks on his authority. His lawful right to exercise same in this

matter is in serious question by the plain language of the statute's triggering

mechanism within it. Hence, the requested relief should issue.

<u>IV. Public Interest:</u>

It is quite clear that the law favors the protection of constitutional rights and

guarantees. Given that many secular activities, such as professional services, liquor

stores, convenience stores and big businesses, some only being required or advised

as best as possible to distance and to practice good hygiene, which is nothing more

than common sense, it behooves one to ask why the same people cannot perform

these advisories in a religious setting? It makes no sense and belies credulity. The

numerical limits placed on houses of worship cannot stand when many secular

businesses and activities are not subject to such a restriction, thereby establishing

facial religious discrimination. Order No. 33 is not facially neutral nor is it

generally applicable. Thus, being subject to strict judicial scrutiny, it must fail as

being irrational, arbitrary and capricious and enjoined as it applies to Plaintiff and

similarly situated parishioners and congregants.

It is quite obvious the public would benefit from this relief as it would allow

people to freely attend Holy Mass and other pious religious activities without the

anxiety and worry of being excluded from participation through no fault of their

own after a "headcount" has been taken. This is not acceptable and substantially

infringes upon guaranteed constitutional rights of free exercise, freedom of

assembly and freedom of association and free speech, bedrock guarantees of the

First Amendment and why this nation was founded by our ancestors. The critical

importance of the human spirit, which yearns for freedom and relief from

unbridled government oppression, has unfortunately not been given its rightful and

paramount importance in the issuance of the Governor's Executive Order No. 33

and many of previously issued Orders prior thereto.  Our liberty interest in

guaranteed and enshrined in the Fifth and Fourteenth Amendments. It cannot be

deprived without due process of law and Plaintiff submits this has not occured in

any manner whatsoever prior to the issuance of any of the Governor's Executive

Orders.

## V. Plaintiff Should Not Be Required To Post A Bond

Plaintiff should not be required t post a bond upon the issuance of a TRO.

Defendant will not suffer any cognizable injury which would necessitate relief,

should the TRO issue and later be vacated. The relief sought by the Plaintiff is the

restoration of his full constitutional rights as they existed on March 9, 2020 and the

voiding of the Governor's Executive Orders issued since March 10, 2020, if not

all, at least those that unconstitutionally infringe upon the Plaintiff's guaranteed

rights.

## CONCLUSION

Plaintiff, Vincent Delaney, respectfully requests that this Court grant his request for a Temporary Restraining Order allowing him and others similarly situated not to be subject to Order No. 31's and Order No. 33's mandates as well as enjoining the continuing enforceability of any and all Executive Orders issued since March 10, 2020 due to the unlawful invocation of c. 639 of the Acts of 1950.

WHEREFORE, Plaintiff, Vincent Delaney, respectfully requests that this Court grant his Motion and issue the requested relief prayed for herein.

Undersigned counsel hereby certifies that a good faith effort was made to discuss and explore whether there existed any common ground for Plaintiff's grievances with the Orders of the Defendant. Correspondence was sent to the Governor's office and received on June 10, 2020. No response to Plaintiff's letter was received prior to filing the Complaint.

Respectfully submitted,
Vincent Delaney,
By his attorney,

/s/ Thomas O. Mason

Thomas O. Mason, Esq. (BBO # 559263)
Law Office of Thomas O. Mason
19 Wells Place
Lynn, MA 01902
Telephone: (781) 599-2689
Email: tm715@aol.com

Date: June 17, 2020

20